# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

**CLIFTON T. FULFORD,**         }
                                }
    **Plaintiff,**             }
                                }
**v.**                          }   **Case No.: 5:11-CV-02080-RDP**
                                }
**MICHAEL J. ASTRUE,**          }
**COMMISSIONER OF SOCIAL**      }
**SECURITY,**                   }
                                }
    **Defendant.**            }

## MEMORANDUM OF DECISION

Plaintiff Clifton T. Fulford brings this action pursuant to Section 1631(c)(3) of the Social Security Act ("the Act") (Tr. 3), seeking review of the decision by the Administrative Law Judge ("ALJ") denying his claim for Supplemental Security Income ("SSI"). (Tr. 16-22). After reviewing the record and the briefs submitted by the parties, the court finds that the decision of the ALJ is due to be affirmed.

**I.      Proceedings Below**

Plaintiff filed his application for SSI on November 6, 2007, in which he alleged that disability began on November 15, 2008.[1] (Tr. 82). After Plaintiff's application was initially denied by the Social Security Administration on December 20, 2007, (Tr. 67), he then filed a written request for a hearing on February 4, 2008. (Tr. 74). Plaintiff's request for a hearing was granted on July 22, 2009. (Tr. 76). On September 11, 2009, the ALJ delivered his decision denying Plaintiff's application for SSI. (Tr. 16-22). In his decision, the ALJ determined that given Plaintiff's age,

---

[1] Plaintiff amended his originally filed alleged onset date of disability from August 27, 2007 to November 15, 2008. (Tr. 93).

education, work experience, and residual functional capacity ("RFC"), jobs exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 20). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore, a proper subject of this court's appellate review. (Tr. 1-3); 42 U.S.C. § 1383(c).

Plaintiff alleges that on August 27, 2007, at the age of thirty-six, he suffered a disabling back injury on the job. (Tr. 36, 173). On the day of the injury, Plaintiff consulted Dr. Eric Roth, an occupational therapist, and was advised to avoid pushing, pulling, lifting of anything over twenty pounds, repetitive stooping, twisting, and bending. (Tr. 36, 174). Plaintiff had no obvious deformities, malalignment, asymmetry, or muscle spasms of the lower back. (Tr. 174). After meeting five additional times over a forty-six day period, upon reviewing Plaintiff's MRI, on October 12, 2007, Dr. Roth discharged Plaintiff with a diagnosis of degenerative disc changes at L5-S1 with central focal disc protrusion, and mild central spinal canal stenosis. (Tr. 169-74). Dr. Roth's prognosis opined that Plaintiff had reached maximum medical improvement without partial permanent impairment, and his work status included regular duty. (Tr. 169). Additionally, Dr. Roth informed Plaintiff that the changes seen on his MRI were "chronic in nature" and had "taken a long time to develop," as there was no herniated disc or any other process that was attributable to his injury. (*Id.*)

Dr. John D. Johnson Jr. issued a second opinion concerning Plaintiff's back injury on December 4, 2007. Dr. Johnson found that Plaintiff's MRI was "unremarkable with no evidence of any disc herniation, nerve root compression, or foraminal stenosis." (Tr. 178). Dr. Johnson opined that (1) he did not have a clear anatomic etiology to explain Plaintiff's ongoing complaints of pain,

(2) he saw nothing for which he would recommend surgical treatment; and (3) he would not restrict Plaintiff's work activities in any form or fashion. (Tr. 179).

Plaintiff then met with an orthopedic surgeon, Dr. Andrew M. Cordover, on March 27, 2008. (Tr. 229). Dr. Cordover re-examined an MRI of Plaintiff's lumbar spine and assessed Plaintiff's condition as central HNP/protrusion L5-S1 with degenerative disc disease ("DDD"). (Tr. 228). In July 2009, Dr. Cordover conducted another MRI and opined that there were no significant changes in the condition of Plaintiff's spine from the prior study done by Dr. Roth on October 9, 2007. (Tr. 236). His final diagnosis stated that Plaintiff suffered from posterior disc protrusion and bilateral facet degenerative changes at the L5-S1 level with resulting spinal canal stenosis and bilateral neural foraminal narrowing. (*Id.*)

## II.     ALJ Decision

For an individual to be determined disabled as defined under the Act, he must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 20 C.F.R. § 416.905. The Social Security Administration has established a five-step process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a). These steps are followed in order. If it is determined that a claimant is or is not disabled at any step of the evaluation process, the evaluation will not proceed.

The first step provides that if a claimant is working, and that work qualifies as substantial gainful activity, then he or she cannot claim disability regardless of medical condition, age, education, or work experience. 20 C.F.R. § 416.920(b). "Substantial gainful activity" is work activity

that involves doing significant mental or physical activities, and is usually done for pay or profit. 20 C.F.R. § 416.974.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that is "severe" under the Act. 20 C.F.R. § 416.920(c). An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 416.921. Third, if the ALJ determines that a claimant's impairment meets or equals an impairment or combination of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant will be found disabled. 20 C.F.R. § 416.920(d).

Before proceeding to the fourth step, the ALJ must assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence contained in the record. 20 C.F.R. § 416.920(e). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from impairment. 20 C.F.R. § 416.945. At step four, the ALJ must determine whether a claimant is capable of performing past relevant work based on the claimant's RFC. 20 C.F.R. § 416.920(f). If a claimant's RFC allows for him to do past relevant work, then he is not disabled.

At the fifth and final step, the ALJ must determine whether the claimant is capable of making an adjustment to any other kind of work given his RFC, age, education, and work experience. 20 C.F.R. 416.920(g). If the claimant is able to do other work then he is not disabled.

Here, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 15, 2008.[2] (Tr. 18). The ALJ then determined that Plaintiff suffered from degenerative

---

[2] This date is the amended alleged onset date of disability.

disc disease at L5-S1 and obstructive sleep apnea, both of which qualify as severe impairments, but do not equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

The ALJ determined Plaintiff's RFC to be as follows:

> He can lift 10 to 20 pounds occasionally using both hands. He must have the option to sit or stand at will and can sit 30 to 45 minutes, stand 20 to 30 minutes, and walk 25 yards alternately over an eight-hour work day with customary breaks. He must avoid stooping, twisting, kneeling, and climbing.

(*Id.*). To make this RFC determination, the ALJ considered all of Plaintiff's symptoms and the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and opinion evidence. (Tr. 19). 20 C.F.R. §§ 416.929, 416.927. Plaintiff testified that as a result of his back injury he was limited as follows: he could lift five to ten pounds with either of his hands, that he could sit fifteen to twenty minutes, that he could stand twenty to thirty minutes, that he could walk about 25 yards, and that he required three to five hour naps every day. (Tr. 45-47). While the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, he found that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms lacked credibility. (Tr. 19). Because of this, the ALJ's assessment of Plaintiff's RFC does not include a requirement of daily naps.

Next, the ALJ determined that Plaintiff was unable to perform any past relevant work, as the demands of the job would exceed his RFC. (Tr. 20, 62). However, the ALJ determined that Plaintiff is able to do other work. A vocational expert testified that given Plaintiff's RFC, age, education, and work experience, he would be able to perform the job requirements of a photocopy machine operator, ticket marker, or packager. (Tr. 21, 62). Thus, the ALJ concluded that Plaintiff was not disabled. (Tr. 22).

### III. Plaintiff's Argument for Reversal

Plaintiff contends that the ALJ erred in denying him disability benefits because he misapplied the appropriate law to the facts of this case. (Pl.'s Mem. 2). Additionally, Plaintiff argues that the decision denying him benefits is not supported by substantial evidence, and demands either an outright reversal of the decision, or in the alternative, a remand "for proper consideration of the evidence and for proper application of the law to that evidence." (*Id.*)

Ultimately, Plaintiff's argument for reversal is based on that portion of the vocational expert's testimony in which he opined that, if the court were to find that Plaintiff had to lie down for two hours or more during a typical workday, all work activity would be precluded. (Tr. 63). Thus, Plaintiff's claim hinges on whether the ALJ erred in refusing to include Plaintiff's need for daily naps in his RFC determination. For the reasons set forth below, the court finds that he did not.

### III. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## IV.   Discussion

As Plaintiff notes in his brief, the ALJ correctly identified the appropriate legal standard for assessing subjective complaints of pain and other symptoms. The "pain standard" requires:

> Evidence of an underlying medical condition and either (1) objective medical evidence confirming severity of alleged pain arising from that condition, or (2) evidence that the objectively determined medical condition is of such a severity that it reasonably can be expected to give rise to the alleged pain.

*Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986) (citing *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985). Plaintiff contends that the ALJ was correct in finding "that [his] medically determinable impairments could reasonably be expected to cause the alleged symptoms;" however, Plaintiff disagrees with the ALJ's conclusion that "[his] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with [his] residual functional capacity assessment." (Tr. 19, Pl.'s Mem. 5).

The law in this Circuit provides that if the "ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). If an ALJ observes that the record lacks objective medical evidence confirming the severity

of the claimant's alleged pain or fatigue, that provides an adequate reason to discredit the claimant's subjective pain testimony. *Reeves v. Astrue*, 238 Fed. Appx. 507, 514 (11th Cir. 1987).

Here, the ALJ pointed to evidence in the medical record to discredit Plaintiff's subjective testimony about the extent to which his pain limits his functioning capacity. (Tr. 19). Specifically, the ALJ noted that none of Plaintiff's treating physicians ever included daily naps in their assessment of his limitations. (*Id.*) Also, the ALJ opined that Plaintiff's daily living activities, which include some housework and independently caring for his personal needs, are inconsistent with his alleged limitations. (Tr. 20). Thus, the ALJ articulated explicit and adequate reasons for discrediting Plaintiff's subjective testimony alleging more serious pain induced limitations than those included in the ALJ's RFC determination.

Plaintiff also asserts that the ALJ's decision is not supported by substantial evidence. Courts have defined substantial evidence as relevant evidence that a reasonable person would accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Here, there is more than a sufficient amount of evidence in the record to convince a reasonable person that Plaintiff's alleged limitations were not entirely credible. Plaintiff's first doctor discharged him with a work status of "regular duty." (Tr. 169). His second doctor noted that Plaintiff's work activities should not be restricted in any form or fashion. (Tr. 178). Finally, Dr. Cordover, whose opinion Plaintiff heavily relied on at the hearing, never once mentioned that Plaintiff's condition might cause him to have to lie down or nap every day. (Tr. 226-38). Hence, there is substantial evidence to support the ALJ's RFC determination, and the finding that he is qualified to do other work, Plaintiff's disability claim was due to be denied.

V.     **Conclusion**

The ALJ properly denied Plaintiff's claim for disability. Though Plaintiff suffers from a severe impairment that prevents him from doing past relevant work, vocational expert testimony establishes that an individual with Plaintiff's RFC can perform the duties of other work and that other work exists in significant numbers in the national economy. There is substantial evidence in the record which supports the ALJ's rejection of Plaintiff's testimony that he is precluded from performing all work activity because of pain and/or other limitations. Therefore, the ALJ's decision is due to be affirmed.

**DONE** and **ORDERED** this ___13th___ day of September, 2012.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE